UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS L. LUKASIK,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

                Criminal Case Number 03-20019
                Civil Case Number 08-10960
                Honorable David M. Lawson

_____/

## OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE

Petitioner Dennis Lukasik was convicted on his plea of guilty of tax evasion. He has filed a motion to vacate his sentence, alleging that he received ineffective assistance of counsel. He alleges four omissions by his attorney: incorrect computation of the sentencing guidelines; failure to raise an affirmative defense; failure to argue that the defendant was not actually involved in one of the schemes; and failure to make an objection to an enhancement of his offense level. The government filed a motion for a more definite statement, asking whether the petitioner's suggestion in his motion papers that there was a brief filed on December 11, 2007 was a misstatement. The Court allowed the petitioner time to file pleadings, and he sent in a notice clarifying that the original motion as filed was his entire motion. The government then responded to the motion under section 2255, arguing that the claims lack merit. As explained below, the claims attacking the length of his custodial sentence are moot because the petitioner has been released from custody, and the remainder of his claims are contradicted by his statements made in open court. Therefore, the motion to vacate sentence will be denied, and the government's motion for a more definite statement will be denied as moot.

I.

The petitioner Dennis Lukasik, his wife Deborah Lukasik, and Thaddeus Turner were charged in a 86-count superseding indictment with tax fraud and wire fraud. As the Sixth Circuit explained in the opinion on direct appeal:

> The charges derive from a fraudulent investment scheme orchestrated by Lukasik, his wife, Deborah Lukasik, and Thaddeus Turner. These three individuals formed a partnership known as Perry Investments, Ltd., to operate a "find, fix, and flip" real estate venture. To fund the scheme, Lukasik solicited investors, to whom he promised investments secured by real property that would generate annualized returns of 11-15 percent. Turner's role was to purchase cheap properties in his own name and quickly resell them to Perry Investments at an artificially inflated price. The conspirators then utilized the inflated value of the property as security to entice new investors. The same property was often used as "security" for multiple investors without the investors' knowledge. The funds received from the investors were to be held for investment in real property, but Lukasik used some of the money to pay for television and phone bills, clothing, restaurant bills, and other personal expenses.

*United States v. Lukasik*,, 250 F. App'x 135, 136-37 (6th Cir. Oct. 3, 2007).

The petitioner pleaded guilty pursuant to a Rule 11 plea agreement to Count 70 of the second superseding indictment, which charged willful attempt to evade his income tax obligations in violation of 26 U.S.C. § 7201. The plea agreement states that the petitioner:

> acknowledges that in order to be found guilty of the offense(s) charged in the indictment, the evidence would have to establish, beyond a reasonable doubt, each of the following elements and facts:
> (1) That on or about the date set forth in the indictment, the defendant had received taxable income;
> (2) That income tax was owing to the United States of America on said taxable income;
> (3) That the defendant well knew and believed that income tax was owing to the United States of America; and
> (4) That the defendant willfully attempted to evade and defeat the income tax due and owing by him to the United States of America, and aided and abetted another in willfully attempting to evade and defeat the income tax due and owing to the United States of America, by failing to pay income tax to the IRS while knowingly receiving income.

Plea Agreement [dkt. #41] at 2.

The plea agreement contained a stipulation that "pursuant to [USSG] § 1B1.2, the defendant shall be treated for sentencing purposes as if he had also been convicted of Counts 1, 3, 10, 13-15, 23-27, 34, 45-48, 50, 51, 54, 55, 57-60, 63, 65-69, 71, 79, 80, and 82-85 of the Second Superseding Indictment." *Id.* at 3.  The agreement provided that the defendant may not be sentenced to a term of imprisonment that exceeds the mid-point of the sentencing guidelines range, as calculated by the Court.  The agreement also provided that "[c]onduct in any counts dismissed at the time of sentencing may be considered by the court in determining the sentencing guidelines." *Id.* at 4.

On April 26, 2004, Mr. Lukasik appeared in court and agreed to plead guilty pursuant to the agreement.  The following colloquy took place:

> THE COURT:  Mr. Lukasik, did you understand all of the other terms of the plea agreement we just discussed on the record?
> A      Yes, sir.
> THE COURT:  Have you had a chance to discuss those terms with Mr. Legghio to your satisfaction?
> A      I have.
> THE COURT:  Do you have any additional questions about them?
> A      No, sir.
> THE COURT:  Do you agree with them?
> A      Yes, sir.
> . . .
> THE COURT: All right.  Has anyone made any other or different promise or assurance to you of any kind in an effort to induce you to plead guilty in this case?
> A      No, sir.
> THE COURT: So you're relying - - you're pleading guilty in reliance only on the written plea agreement as we have discussed here in court?
> A      Yes, sir.
> . . .
> THE COURT: Have you been told you would be treated more leniently if you gave up your right to trial and pleaded guilty?
> A      No, sir.
> THE COURT: Has anyone tried to force you to plead guilty by any mistreatment, threat, pressure or duress brought to bear against you in any way?
> A      No, your Honor.

THE COURT:  Ms. Lukasik, are you pleading guilty freely and voluntarily because, in fact, you are guilty and it is your own choice to plead guilty?
A      Yes, sir.
THE COURT:  Mr. Lukasik, are you entering a guilty plea for those same reasons?
A      Yes, sir.
. . .
THE COURT: Now I'm going to explain the essential elements of the offense, that is the offense to which you're pleading guilty. I'm doing that so you know what the government is required to prove at trial if you chose to go to trial.

I also want to make certain that you understand each of these elements. In addition, I will ask you at the conclusion of this explanation if you believe that the government could prove these elements beyond a reasonable doubt if you elected to go to trial.

So, in other words, to be found guilty of the charge contained in count 70 of the second superseding indictment, the government must prove that on or about the date set forth in that indictment, you had received taxable income.

Secondly, that income tax was owing to the United States on the taxable income.

Third, that you knew and believed that the income tax was owing to the United States at the time.

And, fourth, that you willfully attempted to evade and defeat the income tax due and owing to the United States, and aided each other and abetted each other in willfully attempting to evade and defeat the income tax by failing to pay the tax to the IRS while you knowingly had received the income.

. . .
Mr. Lukasik , do you understand these elements?
A      Yes, sir.
THE COURT: Do you have any questions about them?
A      No.
. . .
THE COURT: All right. Mr. Lukasik, do you believe if you went to trial, the government could prove all of those elements beyond a reasonable doubt?
A      Yes, sir.
. . .
THE COURT: Mr. Lukasik, how are you going to plead to that charge?
A      Guilty.
. . .
THE COURT:  Very well. I don't know if I covered this with you yet, Mr. Lukasik, but after hearing the court recite the elements, do you believe if you went to trial the government could prove each of those elements beyond a reasonable doubt?
A      Yes, sir, I do.
THE COURT: How are you pleading to the charge of willfully evading income tax owed to the United States?
A      I plead guilty.

> THE COURT: Are you entering that plea because you believe you are guilty of that offense?
> A     Yes, sir.
> THE COURT: Would you tell me what you did in order to cause you to believe you're guilty of that offense.
> A     In 1977 I resided in Royal Oak, was married to Deborah and did earn income by being employed through Perry Investments, and did file income tax returns that did not state all of my income.
> THE COURT: Did you do that intentionally? Did you intentionally understate your income?
> A     Yes, sir.
> THE COURT: Did you know that the tax was owed on that income?
> A     Yes, sir.
> THE COURT: Did you pay the tax?
> A     No, sir.
> THE COURT: You paid the tax knowing that you were essentially attempting to defeat the tax owed to the government; is that correct?
> A     Yes, sir.
> THE COURT: You knew the tax was due and owing sometime during 1998 for calendar year 1987?
> A     That's correct.
> THE COURT: What was your position with Perry Investments?
> A     I brought money to them.
> THE COURT: How is that?
> A     Through the – I was in sales and I brought investors to Perry.
> THE COURT: All right. Did you work on some sort of commission basis?
> A     Yes, sir.

Plea Tr. at 24-27, 36-37, 41-43.

The Court accepted the plea agreement. The Court conducted a lengthy sentencing hearing at which several of the petitioner's fraud victims testified. After determining the amount of loss, the Court calculated the guidelines range at 41-51 months based on a net offense level of 22 and a criminal history category of I. The offense level included a 12-level enhancement for a loss amount exceeding $1.5 million, and a two-level enhancement for targeting a vulnerable victim.

The petitioner was sentenced to 46 months in custody, three years of supervised release, and ordered to pay restitution in the amount of $2,074,219.70. He appealed his conviction and sentence,

and the court of appeals affirmed. *United States v. Lukasik*, 250 F. App'x 135 (6th Cir. Oct. 3, 2007). The petitioner filed his motion to set aside the sentence on March 3, 2008. In the motion, the petitioner referenced a December 11, 2007 filing. The government filed a motion for a more definite statement, seeking clarification about whether the motion of March 3 was the only such motion. In response to the motion, the Court allowed the petitioner to file any supplemental papers by May 1, 2008. The petitioner filed a statement that the reference to a December 11, 2007 paper was in error and the March 3, 2008 filing was complete. The government responded on May 30, 2008, arguing that the petitioner's claims were without merit. The petitioner replied on July 10, 2008. On February 27, 2009, the petitioner was released from custody.

II.

As noted above, the petitioner raises four claims. First, he argues that his counsel was ineffective by not arguing for a correct amount of loss, which "therefore caused petitioner to spend more time incarcerated than appropriate." Mot. at 5. He contends that his attorney should have argued that the proper loss amount was only $750,000, which is "without the diduction [sic] from any proceeds of and from the Bankruptcy's Court's property liquidation," although he does not explain this argument further. Mot. at 8.

Second, he argues that his trial attorney was constitutionally ineffective by failing to "present an affirmative defense" of ignorance of the law based on *United States v. Tarwater*, 308 F.3d 494 (6th Cir. 2002).

Third, the petitioner argues that his attorney was constitutionally ineffective because he failed to argue that the petitioner and his wife "were not partners in Perry Investments," and that he

failed to delineate between "a well reconized [sic] investment opportunity, not as an artifice to defraud." Mot. at 10.

Finally, the petitioner argues that his attorney was constitutionally ineffective, although his grounds are not quite clear. His full argument reads:

> Counsel was ineffective by not making the valid objection to a two level enhansement for / under vunerable victims, by the informing of the defendent [sic] and his wife, counsel stated that he was ordered by the "presiding judge" into his chambers. After that meeting attorney Legghio stated he was winning the last argument reguarding vunerable victims enhansement. If he accepted that victory we (my wife and I) would go to trial and be facing much more time, per what the meeting in the judges' chambers stood for.

Mot. at 11. From the statement, the Court discerns either that (1) his counsel failed to object to the enhancement at sentencing, or (2) the petitioner believes that a "presiding judge" told his attorney that if the petitioner pleaded guilty, the vulnerable victims enhancement would not apply to him.

As an initial matter, the Bureau of Prison's Inmate Locator Service states that the petitioner was released from custody. The Court may take judicial notice of this fact. *Demis v. Sniezek*, 558 F.3d 508, 513 (6th Cir. 2009). Section 2255 extends jurisdiction to courts only over a motion by a person who is "in custody." 28 U.S.C. § 2255; *Ward v. Knoblock*, 738 F.2d 134, 139 (6th Cir. 1984). However, the Court retains jurisdiction over the present petition, if not all of the claims. As a statutory matter, "once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968); *see also Maleng v. Cook*, 490 U.S. 488, 492 (1989) (per curiam).

However, although the Court has jurisdiction under section 2255 over this petition because it was filed while he was in custody, his claims regarding the length of sentencing are now moot.

*North Carolina v. Rice*, 404 U.S. 244, 248 (1971) ("Nullification of a conviction may have important benefits for a defendant, as outlined above, but urging in a habeas corpus proceeding the correction of a sentence already served is another matter."). Claims one and three are such claims. In claim one, the petitioner raises a pure sentencing guideline calculation claim, arguing that his attorney's error "caused petitioner to spend more time incarcerated than appropriate." Mot. at 5. In claim three, the petitioner clarifies that he "is simply seeking relief and not collaterally attacking his conviction." Pet.'s Reply at 3; *see also id.* at 3-4 ("Simply put,, [sic] this sentence is based on an amount of money,, [sic] that is a loss, and his attorney **missed** the chance to correct both the amounts, and therefore the actual time this petitioner has spent in prision. [sic]"). The petitioner does not appear to quarrel with the amount of restitution ordered or the term of supervised release. The Court lacks jurisdiction to consider the arguments that derive from the sentencing claims because "no actual injury remains that the Court could redress with a favorable decision" on these claims. *See Demis*, 558 F.3d at 513.

Claims two and four also allege ineffective assistance of counsel based on other reasoning. A federal prisoner challenging his sentence under section 2255 must show that the sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceeds the maximum penalty allowed by law, or "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Claims of ineffective assistance of counsel are properly raised in a section 2255 motion. *United States v. Graham*, 484 F.3d 413, 421-22 (6th Cir. 2007) (quoting *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997).

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To

show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687. A defendant is entitled to effective assistance at the sentencing stage of the criminal process. *See Wiggins*, 539 U.S. at 521.

Ultimately, both remaining claims must fail because they are contradicted by the petitioner's prior statements in open court during the plea hearing. "[T]he representations of the defendant, his

lawyer, and the prosecutor at [a plea] hearing . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). A Court may dispose of such a claim without a hearing "if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)).

In claim two, the petitioner contends that his lawyer failed to argue that he was not actually guilty of the offense because ignorance of the law is an affirmative defense to tax evasion. In his plea agreement and his statements in open court, the petitioner acknowledged that the government must prove that he knew income tax was owed to the United States and willfully attempted to evade that income tax. Ignorance of the law, the "affirmative defense" that he wishes his attorney had told him about, is nothing more than the absence of the intent element of the crime. In fact, the case he cites in support of his argument, *United States v. Tarwater*, 308 F.3d 494 (6th Cir. 2002), held that a finding that a defendant acted "willfully" in filing false tax returns "would necessarily negate any possibility of 'good faith'" by the defendant. *Id.* at 510. Because the record establishes that the petitioner knew when he pleaded guilty that intent to violate the law was an element of the crime, he cannot now argue his attorney was deficient for not bringing the defense to his attention.

The fourth issue raised by the petitioner lacks clarity. He appears to be stating that he only pleaded guilty because he was told that the two-point vulnerable victims enhancement would not

-10-

be used if he pleaded guilty. Like the prior claim, this claim fails because it is contradicted by the record. At his plea hearing, he stated that he was not told that the Court would treat him more leniently if he pleaded guilty. Plea Tr. at 25-26. He also stated that no one promised him anything outside the terms in the plea agreement. *Id.* at 24-25. These statements directly contradict the petitioner's assertion that he was told the two-point vulnerable victim enhancement would not be applied to him, and the argument fails on that basis. The petitioner cannot now allege facts without specific details or supporting affidavit that are contradicted by his unequivocal statements in open court during his plea hearing. Therefore, the petitioner has not pointed to any grounds that are not squarely foreclosed by his acknowledgments during the plea hearing.

III.

The petitioner has not shown that his conviction or sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceeds the maximum penalty allowed by law, or "is otherwise subject to collateral attack." 28 U.S.C. § 2255.

Accordingly, it is **ORDERED** that the petitioner's motion to vacate his sentence [dkt. #145] is **DENIED**.

It is further **ORDERED** that the government's motion for a more definite statement [dkt. #148] is **DENIED as moot**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 31, 2011

-11-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 31, 2011.

                                          s/Deborah R. Tofil
                                          DEBORAH R. TOFIL